Ada M. CHASTEEN, Appellant,

v.

Bradford F. MILLER, Appellee.

No. 13754.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 6, 1961.

Porter, Madalinski & Mondin, San Antonio, for appellant.

Edward W. Penshorn, San Antonio, for appellee.

BARROW, Justice.

This suit was filed by appellant, Ada M. Chasteen, to set aside and hold for naught a deed from her former husband, Willard J. Chasteen, to appellee, Bradford F. Miller, on the ground that it was in fact a mortgage on the homestead of appellant and said Willard J. Chasteen. Appellant alleged that she did not join in the conveyance, that the property was at the time her homestead, and that such homestead was in the divorce decree awarded to her, that, therefore, the deed from her husband alone, without her joinder, is invalid under Article 16, § 50, of the Texas Constitution, Vernon's Ann.St. Appellant seeks to remove cloud from her title to the property by virtue of said deed from her former husband to appellee. The trial was to the court without a jury. A take nothing judgment was rendered against appellant.

Appellant predicates her appeal upon three points: (1) The trial court erred in failing to allow her to show that the deed was a mortgage as security for at-

torney's fees. (2) The court erred in holding that the deed in question was valid, because it was not acknowledged in the manner required by law. (3) The court erred in failing to void the deed, because the undisputed evidence shows that the same was a lien or mortgage in violation of Article 16, § 50, of the Texas Constitution.

■ Appellant's first point should be overruled because the record shows that the only evidence offered by appellant, and excluded by the court, is an instrument which purports to be a statement of account due from appellant to appellee. The record shows that the document was simply offered by appellant without identification. The evidence was excluded by the court upon the objection that the instrument was not identified and because it was immaterial and irrelevant. The instrument was then introduced for the purpose of appellant's bill of exception. Appellant offered no evidence to show where the instrument came from or that appellee had anything to do with it. The instrument does not purport to have been signed by appellee. Moreover, the instrument shows on its face that at least parts of it are immaterial. The appellant made no separate tender in evidence of any part thereof that might have been material. The record fails to show anywhere that the trial court failed or refused to permit appellant to show that the deed in question was in fact a mortgage. The court did not err in sustaining the objection and excluding the document offered under the circumstances.

By appellant's second point she contends that the deed is void because it was not joined in by her as the wife of Willard J. Chasteen at the time of the conveyance, as required by Art. 1300, Vernon's Ann.Civ. Stats. While it is true that the deed was executed and acknowledged by Chasteen on July 30, 1956, it was executed at Wichita Falls, Texas, and mailed to San Antonio with the express understanding that it was not to be delivered unless and until the divorce was granted. The undisputed evidence shows that it was received in San Antonio on July 31, 1956, the same day the divorce was granted, but was actually delivered after the divorce was granted. After the divorce was granted, the following instrument was executed by appellant and appellee:

"This Agreement, by and between Ada M. Chasteen and Bradford F. Miller, her attorney, Witnesseth:

"Whereas, Bradford F. Miller has rendered to Ada M. Chasteen legal services in connection with her divorce action against her husband, and as a result thereof she has made a property settlement and obtained a decree of divorce from her husband, and has agreed with her said attorney that a reasonable attorney's fee for the services rendered by him in connection with said divorce action would be substantial; and

"Whereas, she has no funds with which to pay the same in cash, and the said Bradford F. Miller has agreed to accept in payment of his fee for such services the community interest her former husband Willard J. Chasteen did have in and to the former homestead located at 845 Sunshine Drive, San Antonio, Texas; and

"Whereas, the said Willard J. Chasteen has agreed to convey his said community interest to the said Bradford F. Miller in payment of his liability for attorneys fees in this action;

"And it appearing that the present fair market value of the said property is in the sum of Eighteen thousand dollars ($18,000.00); and,

"Whereas, the only community interest of said Willard J. Chasteen in said property arises by the payments of principal upon the indebtedness against said property, owing to the Richard Gill Company, or its assigns, and to M. Augusta Rhodes, since the

date of their marriage on January 22, 1953, to the date of the decree.

"Now Therefore, it is covenanted and agreed that the interest of the said Bradford F. Miller in the said property shall be in the proportion that the community interest of the said Willard J. Chasteen, computed as aforesaid, bears to the present fair market value of the property, which value is in the sum of Eighteen thousand dollars ($18,000.00).

"Witness our hands this 31st day of July, 1956:

"/s/ Ada M. Chasteen
"/s/ Bradford F. Miller"

■ It is well settled that in order to effect transfer of title to land the deed must be delivered to and accepted by the grantee. Anglin v. Cisco Mortgage Loan Co., 135 Tex. 188, 141 S.W.2d 935; Cox v. Payne, 107 Tex. 115, 174 S.W. 817; Koppelmann v. Koppelmann, 94 Tex. 40, 57 S.W. 570; 14 Tex.Jur. 538, Deeds, § 98. In order to constitute delivery, a deed of conveyance must be placed in the hands of the grantee, or within his control, with the intention that it is to become presently operative as a conveyance. Bell v. Rudd, 144 Tex. 491, 191 S.W.2d 841. Without such intention manual delivery to the grantee is insufficient to pass title. Bell v. Rudd, supra; Anderson v. Hutto, Tex.Civ.App., 126 S.W.2d 709; Bibby v. Bibby, Tex.Civ. App., 114 S.W.2d 284. At the time the deed became effective as a conveyance the Chasteens were divorced and the former husband and wife were single persons. It is also well settled that where, in a divorce decree, the court does not set aside the homestead to the use of the wife and minor children, as it could have done, the former husband and wife stand toward each other as mere tenants in common, subject to all the rules and regulations of strangers bearing toward each other that relationship. Kirkwood v. Domnan, 80 Tex. 645, 16 S.W. 428. The holding in that case has been consistently followed. McDaniel v. Thompson, Tex.Civ.App., 195 S.W.2d 202, error ref.; Myers v. Crenshaw, Tex.Civ.App., 116 S.W.2d 1125, affirmed 134 Tex. 500, 137 S.W.2d 7; O'Neil v. O'Neil, Tex.Civ.App., 77 S.W.2d 554. Therefore, the ex-husband's deed conveying his interest in the property after the divorce, is a valid conveyance of such interest as he had.

■ It was stipulated by the parties in this suit that the land was the separate property of Mrs. Chasteen at the time she married, that it was her homestead and continued to be her homestead up to the time of the execution of the instruments involved herein. However, the court did not in the divorce decree set aside the property to her as her homestead. The Supreme Court says that the surviving spouse can deal with the homestead as he wishes. "Under our laws, there can be no doubt of the full power of a surviving husband or wife to mortgage the homestead owned as his or her separate estate, or the community homestead to secure a community debt, although it constitutes, at the time, the home of the other constituents of the family." Straus v. Brooks, 136 Tex. 141, 148 S.W.2d 393; Spencer v. Schell, 107 Tex. 44, 173 S.W. 867. After her divorce, therefore, Mrs. Chasteen had the power to claim or to forego her claim to her homestead. After the divorce, by her own act, she agreed "that the interest of the said Bradford F. Miller in the said property shall be in the proportion that the community interest of the Willard J. Chasteen, computed as aforesaid, bears to the present fair market value of the property * * *." Mrs. Chasteen, after the divorce, contracted in writing that her attorney, Bradford F. Miller, had a described interest in property over which she had the power to claim or not to claim a homestead interest. She exercised that power by disclaiming the interest. Appellant's second point is overruled.

■ In her third point, appellant relies entirely on the written agreement executed by appellee and herself. She con-

tends that the agreement shows on its face that she is giving a mortgage on the homestead to appellee. The instrument speaks for itself. By it she agrees to the proportionate interest of her former husband in the property, and that appellee has agreed and does agree to accept the former husband's interest in the property in payment of his attorney's fees and not as security for a debt for attorney's fees.

Nowhere in this record, the pleadings or evidence in the trial court, or in her brief, either by point, statement, argument or citation of authorities, in this Court, does appellant even intimate that Willard J. Chasteen had no interest in the property. Her entire suit, as shown by her pleading in the trial court and her brief in this Court, is based upon a claim that the husband, during the existence of the marriage, executed a deed purporting to convey an interest in the homestead, which was in fact a mortgage; and that the instrument was void because (1) it was a mortgage on the homestead, executed during the marriage, and (2) because the instrument was not signed and separately acknowledged by her, the wife, in the form and manner required by law for conveyance of the homestead. It is not disputed that the property was her separate property at the time she married Chasteen. It is not disputed that it was encumbered with valid liens, and that during the marriage, community funds in the amount of $2,625.46 were paid in the discharge of such liens. It is not disputed that she executed the contract with appellee at a time when she was a feme sole, fully and legally competent to contract with reference to her property. This record contains no suggestion that she was misled, overreached or defrauded by appellee in the making of such contract. Undoubtedly, at the time of the conveyance Chasteen did have an equity, interest or charge against the property, and did have such interest under the undisputed evidence. This is not a suit for partition where the equities should be adjusted. In Hillen v. Williams, 25 Tex.Civ.App. 268, 60

S.W. 997, at page 998, in a similar situation where community funds were used to pay off purchase money indebtedness, the Court said:

"If any portion of the purchase money for said land can be shown to have been paid with community funds of plaintiff and said Dorsett, said community estate was entitled to reimbursement for the amount so paid, and the same was a charge upon said land."

That case was cited with approval by the Supreme Court in Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620, at page 628, wherein the Court said:

"In allowing a reimbursement for funds spent, if any portion of the purchase money for said land can be shown to have been paid with separate funds of Mrs. Dakan, and with community funds of plaintiff and G. W. Dakan, Mrs. Dakan will be entitled to reimbursement for the amount of her separate funds and her share of the community funds so paid; * * *."

Thus, it is apparent from the record that Chasteen had an equity interest in or charge against the land; that he, with her agreement, conveyed the same to appellee in settlement of attorney's fees due to him, and that she, rather than have the same adjusted by the court, agreed with appellee as to their respective interests in the property.

The judgment of the trial court is affirmed.

MURRAY, Chief Justice.

I dissent from the opinion of the majority. I do not agree that the deed from the former husband to appellee was not delivered until after the divorce between Ada M. Chasteen and Willard J. Chasteen had been granted and therefore valid, though not acknowledged by the wife in the manner prescribed by the provisions of Arts. 1299 and 1300, Vernon's Ann.Civ.

Stats., and the Texas Constitution, Art. XVI, § 50.

It is a fair deduction from the evidence given by appellee himself, that this deed was signed and acknowledged by Willard J. Chasteen alone in Wichita Falls, and placed in the United States mail, properly addressed to appellee at San Antonio, Texas, on July 30, 1956, and was received by appellee on the morning of July 31, 1956. Thereafter, appellee secured the decree of divorce and then had Mrs. Chasteen sign the agreement which appears in the Statement of Facts. Appellee did not consider the deed effective until after the decree was rendered, because he had an agreement, not shown to have been in writing, that the deed would not become effective unless and until after the divorce decree was rendered. He thereafter had the deed recorded, and now claims under such deed. Here, neither Willard J. Chasteen nor appellee is trying to defeat the deed, both seem to admit the execution and delivery of the deed, the only question is, on what hour did the deed become effective? When the deed was signed, acknowledged and placed in the United States mail, properly addressed, it passed beyond the control of Willard J. Chasteen and his lawyer. Appellee physically received it on the morning of July 31, but did not consider it effective until after the divorce decree had been rendered, because he had an agreement with counsel for Willard J. Chasteen that it would not become effective until that time.

It is my opinion that the deed was effective, if at all, from the moment it was physically delivered to appellee, and the oral agreement that it was not to become effective until after the divorce decree was rendered, was a void agreement.

There was no delivery of this deed to a third party in escrow, with the agreement that it would not become effective until the divorce decree was rendered, but the deed was delivered by the grantor directly to the grantee with an oral understanding that it was not to become effective until the divorce was granted. Such an oral condition is void under the circumstances. In Holt v. Gordon, 107 Tex. 137, 174 S.W. 1097, the Supreme Court, said:

"It is our opinion that the Court of Civil Appeals correctly ruled the evidence to be inadmissible. It may be shown by parol testimony that an ordinary written instrument was executed under an agreement that it was not to become effective except upon certain conditions. Loving v. Dixon, 56 Tex. 75; Burke v. Dulaney, 153 U.S. 228, 14 Sup.Ct. 816, 38 L.Ed. 698; Blewitt v. Boorum, 142 N.Y. 357, 37 N.E. 119, 40 Am.St.Rep. 600; Merchants' National Bank v. McAnulty, Tex.Civ.App., 31 S.W. 1091. But that principle has never been recognized by this court as applicable to a deed to land, or a deed of trust affecting the land, where the delivery of the instrument was made to the grantee, and not to a third person. It has, upon the contrary, been distinctly held that a deed or deed of trust cannot be an escrow where it is delivered to the grantee in the instrument."

Appellee does not contend that he did not receive the deed manually and take it into his possession before he secured the divorce for Mrs. Chasteen, but contends that by some mental reservation he did not consider the deed effective or delivered until after the divorce decree was rendered. The rule against a husband being able to convey the homestead without the consent of the wife, given by her separate acknowledgment made in the manner provided for in Art. 1300, supra, is a wise one, and the courts will not permit it to be circumvented or evaded, either by a parol understanding with the grantee, to whom the deed is physically delivered, that the deed is not to become effective until the parties are divorced, or by a mental reservation on the part of the grantee that he will not consider such a deed effective, though

in his physical possession, until the happening of such an event. Here the parties have stipulated that the property was homestead property at all relevant times, including the time of the trial. It was not only the homestead, but it was the separate property of the wife. The husband has no authority, before or after marriage, to dispose of the separate property of the wife without her joinder. Art. 1299, Vernon's Ann.Civ.Stats.; Haynie v. Stovall, Tex.Civ.App., 212 S.W. 792.

The agreement executed by Mrs. Chasteen, between herself and her lawyer, did not authorize Mr. Chasteen to convey any part of his wife's homestead or of her separate property, unless he owned a right, title, or interest in the premises at 845 Sunshine Drive, by reason of the fact that some community funds had been used to pay a part of the purchase price on the same.

The law is clear that property which is the separate property of the wife at the time of her marriage remains her separate property after marriage, and does not become community property simply because community funds are used to pay some of the purchase price indebtedness against it. At most, the husband has a right of reimbursement, which is only an equity. Mendoza v. Mendoza, Tex.Civ.App., 255 S.W.2d 251; Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620. In Jenkins v. Robinson, Tex.Civ.App., 169 S.W.2d 250, 251, the Court said:

"This is contrary to the settled rule that where title is acquired by either spouse before marriage its status as separate property is fixed at the time of its acquisition, which status cannot be altered thereafter by the fact that the remainder of the purchase price is paid for with funds of the community estate. Lee v. Lee, 112 Tex. 392, 247 S.W. 828."

Where a divorce decree fails to partition the estate of the parties, as is required by Art. 4638, Vernon's Ann.Civ.Stats., then that which was the separate property of each party remains separate property and the spouses become tenants in common of the community property. Miller v. Graves, Tex.Civ.App., 185 S.W.2d 745, error refused; Art. 4614, Vernon's Ann.Civ.Stats.; 15 Tex.Jur. p. 596, § 117; 15 Tex.Jur. p. 586, §§ 109 and 111.

Either spouse may thereafter bring a suit for an accounting and partition of their estate. Dakan v. Dakan, supra, is a suit of this nature. In such a suit either spouse may seek reimbursement for sums paid out on the separate property of the other, and the court might give one spouse a lien against the separate property of the other to secure funds paid out, either for improvements of the separate property or to pay off debts against such property, but until such suit is heard and such equity of reimbursement has been determined, one spouse does not have any right, title or interest in the separate property of the other, and the most the court can do is to establish a lien against the separate property to secure the payment of the amount of reimbursement due. In Dakan v. Dakan, supra, [125 Tex. 305, 83 S.W.2d 628] the Court said:

"In allowing a reimbursement for funds spent, if any portion of the purchase money for said land can be shown to have been paid with separate funds of Mrs. Dakan, and with community funds of plaintiff and G. W. Dakan, Mrs. Dakan will be entitled to reimbursement for the amount of her separate funds and her share of the community funds so paid; * * *."

In 23 Tex.Jur. pp. 188 and 190, § 158, it is stated:

"In a proper case equity will take an account between the parties and will reimburse the one entitled, and in doing full equity will often give a lien against the property improved. * * *

"The whole doctrine of reimbursement is one of equity so that at last .:

each case is governed by a consideration of the circumstances surrounding it."

In Allen v. Allen, 101 Tex. 362, 107 S.W. 528, 529, the Court said:

"After the title vested in Allen, free from a trust of any character, he could only have conveyed it by some instrument in writing."

In White v. Hebberd, Tex.Civ.App., 89 S.W.2d 482, 485, the Court said:

"The status of property as separate or community is fixed by the facts of acquisition at time thereof. Janes v. Gulf Production Company (Tex.Civ.App.) 15 S.W.(2d) 1102; Allen v. Allen, 101 Tex. 362, 107 S.W. 528; Creamer v. Briscoe, 101 Tex. 490, 109 S.W. 911, 17 L.R.A.(N.S.) 154, 130 Am.St.Rep. 869; Welder v. Lambert, 91 Tex. 510, 44 S.W. 281; Stiles v. Hawkins (Tex. Com.App.) 207 S.W. 89. And the fact that part of the consideration is paid out of the community estate or the separate estate of the other spouse, or that improvements are placed thereon by such estates, does not alter that status. Such payments, while they may constitute an equity or a charge for which the party contributing may be entitled to reimbursement in an action of equitable partition, create no title or interest in the land as such. Dakan v. Dakan, 125 Tex. 305, 83 S.W.(2d) 620, and cases cited."

The record here affirmatively shows that the property was and is the separate property of Mrs. Chasteen. The agreement above referred to does not purport to be a property settlement between the spouses. It is not a conveyance of Mrs. Chasteen's separate property or homestead. Arts. 1288, 1299 and 1300, supra. It is not a ratification of the deed executed by Mr. Chasteen, nor does it work an estoppel against Mrs. Chasteen because it related to a preexisting debt, and appellee does not show that it caused him to act to his injury.

I am fully aware that the wife, after divorce, can convey her separate property or her homestead by a written conveyance, such as is provided for by Art. 1288, supra, but the so-called agreement between Mrs. Chasteen and her lawyer is not such a conveyance. Allen v. Allen, supra.

The so-called agreement consists of four "Whereases" and one "Therefore." The first "Whereas" recites the fact that the attorney had rendered Mrs. Chasteen valuable services by representing her in her divorce suit, and is entitled to a substantial fee for his services. The second "Whereas" recites the fact that Mrs. Chasteen has no cash on hand to pay her attorney, and that he has agreed to accept in payment for his fee the community interest her former husband, Mr. Chasteen, has in the homestead located at 845 Sunshine Drive, San Antonio. The third "Whereas" recites the fact that Mr. Chasteen has agreed to convey his said interest to the attorney in payment of his fee and that the value of the property is $18,000. The fourth "Whereas" is a recital that the only community interest Mr. Chasteen in the property arises out of the payment of principal upon the indebtedness against the property. The "Therefore" is a covenant that the interest of the said attorney in the property shall be in the proportion that the community interest of Mr. Chasteen, computed as aforesaid, bears to the present market value of the property.

To sum it all up, it is an agreement that the attorney is entitled to a substantial attorney's fee, that Mr. Chasteen is willing to convey any interest he has in Mrs. Chasteen's home and separate property (which is none) to the attorney in payment of his attorney's fees; that the property is of the present value of $18,000; that Mr. Chasteen's only interest in the property arises from the payment of a part of the purchase price of such property with community funds. Under the law such interest would be nothing. See authorities above. It is agreed that this interest of Mr. Chasteen, which is nothing, shall be in proportion to that which such interest bears to

the fair market value of the entire property. No matter how it is calculated, it is still nothing.

In other words, this agreement means nothing, unless the law gives to Mr. Chasteen an interest in Mrs. Chasteen's separate property by reason of the fact that during marriage community funds were used to pay purchase money indebtedness of her separate property. The law is clear that it does not give him any interest. Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620; Allen v. Allen, 101 Tex. 362, 107 S.W. 528; Mendoza v. Mendoza, Tex.Civ.App., 255 S.W.2d 251; Jenkins v. Robinson, Tex.Civ. App., 169 S.W.2d 250; Ogle v. Jones, Tex. Civ.App., 143 S.W.2d 644; White v Hebberd, Tex.Civ.App., 89 S.W.2d 482; Art. 4614, Vernon's Ann.Civ.Stats.

At most, Mr. Chasteen had a right to bring a suit for accounting and partition between himself and Mrs. Chasteen of their estate. In such a suit he could sue for reimbursement for his share of the community funds used to pay off the purchase money lien on the premises known as 845 Sunshine Drive, but this fact would not change the status of this property to that of community property. Dakan v. Dakan, supra; Speer's Law of Marital Rights, §§ 388, 389 and 390; 23 Tex.Jur. § 158, pp. 187, 188, 189, 190.

The charge of equity for improvements placed on land is not a right, title or interest in the land as such. Curtis v. Poland, 66 Tex. 511, 2 S.W. 39; Schmidt v. Huppman, 73 Tex. 112, 11 S.W. 175.

Thus it will be seen that Mr. Chasteen did not have any right, title or interest that he could convey by deed, in the property at 845 Sunshine Drive, which was the separate property of Mrs. Chasteen, and that at most he had only an equitable right of reimbursement, which a court of equity would protect upon proper pleadings and proof. He has no right, either before or after divorce, to dispose of Mrs. Chasteen's separate property without her consent, or her joining in the conveyance in the manner provided for by Arts. 1288, 1299 and 1300, Vernon's Ann.Civ.Stats.; Brady v. Garrett, Tex.Civ.App., 66 S.W.2d 502. See other authorities above.

When this agreement is construed as a whole, it is one to the effect that Mr. Chasteen has no right, title or interest in the property located at 845 Sunshine Drive, and that all he has is an equitable right to seek reimbursement from Mrs. Chasteen for his share of the community funds that were used to pay part of the indebtedness against her separate property.

The judgment should be reversed and judgment here rendered removing cloud from appellant's title.