Annie Webb YOUNGER, Appellant,

v.

Rexie Lessie YOUNGER, Appellee.

No. 3572.

Court of Civil Appeals of Texas.

Waco.

July 10, 1958.

Rehearing Denied Aug. 14, 1958.

Julius C. Jacobs, Corsicana, for appellant.

Dawson & Dawson, William J. McKie, Corsicana, for appellee.

McDONALD, Chief Justice.

This is a divorce case in which the husband plaintiff was granted a divorce against the wife defendant, and in addition awarded a personal judgment against the wife defendant for $4,500; such sum being ½ of the amount of the enhancement in value of certain separate property of the wife, which the Trial Court found to have been improved in part with community funds. From that part of the judgment awarding plaintiff the $4,500 personal judgment against defendant, defendant has appealed.

The record reflects that plaintiff and defendant are both in their sixties; that they married on 5 December 1950, and separated on 14 February 1953; that at the time of the marriage plaintiff had nothing; that defendant, at the time of the marriage, owned the home plaintiff and defendant lived in after marriage; owned lots in Corsicana, Ennis and Marlin; owned a farm

in Limestone County; owned 30 to 50 head of cattle and 100 to 250 hogs; that defendant gave readings and advice from which she derived revenue by way of gifts; that plaintiff made sandwiches and sold them to persons waiting to see defendant for advice, from which some revenue was derived; that in about April of 1951 during the marriage of the parties, plaintiff and defendant began the construction of a hotel on defendant's lots in Marlin and completed same in latter 1952; that defendant filed suit for divorce against plaintiff in Limestone County in 1953 but dismissed the case; that defendant filed suit for divorce against plaintiff in Dallas County, using the name of "Ben Younger" instead of plaintiff's true name, Rexie Lessie Younger; that a divorce was granted to defendant in this case but same was subsequently set aside on bill of review and defendant took a nonsuit in the case; that defendant entered a ceremonial marriage with C. L. Jackson in 1953 after obtaining the divorce in Dallas County (which was set aside). In the case at bar plaintiff contends that community funds were used to construct the hotel in Marlin and sought judgment for ½ of the enhanced value of defendant's lots (separate property) by reason of the construction thereon. Defendant contends that the hotel was constructed with her separate funds, and that plaintiff has not discharged his burden of proof of tracing community funds into the building. While this suit was pending defendant had the hotel torn down and the materials transported to Houston and re-erected on real estate not belonging to defendant; that two days prior to the completion of trial in the instant case the hotel burned; was a total loss with no insurance coverage.

The Trial Court, after hearing without a jury, granted plaintiff the divorce sought; and a personal judgment against defendant for $4,500, representing plaintiff's asserted community ½ interest in the enhanced value of the hotel property. The Trial Court, upon request, filed Findings of Fact and Conclusions of Law, pertinent portions of which are summarized below:

## Findings of Fact

14. At the time of plaintiff's and defendant's marriage, defendant did not have any money accumulated as her separate property.

15. At the time of plaintiff's and defendant's marriage, defendant owned approximately 30 head of cattle and 100 head of hogs as her separate property.

16. During the marriage of plaintiff and defendant, defendant only sold a small number of the hogs she owned as her separate property. The rest of the hogs were butchered by defendant for personal consumption.

17. At the time of their divorce all the hogs had been disposed of by defendant.

18. Most of the cattle owned by defendant as her separate property were butchered by her for personal consumption.

19. After this divorce suit was filed, defendant disposed of most of the cattle, including the offspring which occurred during the marriage.

19a. Aside from the sale of cattle and hogs, no funds were received from any source other than the business conducted by defendant, with the help of the plaintiff.

19b. Substantial sums were realized from the earnings of the business conducted by defendant with the help of plaintiff, these sums averaging $100 per day.

20. At the time this divorce action was heard, defendant had disposed of all but 4 cows and 3 calves, all of which were acquired during the marriage between plaintiff and defendant as community property.

21. The following additional personal property was acquired during the marriage and purchased with community funds: a) 1955 Pontiac; b) 1954 Ford; c) 1949 station wagon; d) tractor; e) deep freeze; f) television.

22. All debts except on above mentioned property were contracted by defendant prior to her marriage with plaintiff.

23. Defendant, at all times during the marriage, had exclusive control and management of the community property of the parties.

25. In April 1951, during the marriage of the parties, plaintiff and defendant began construction of a hotel upon two lots, being the defendant's separate property, in Marlin.

26. The construction of the hotel was completed in the latter part of 1952.

27. At least $14,000 was expended in the construction of the hotel in Marlin.

28. At least ½ of the funds expended in the construction of the hotel in Marlin were community funds of plaintiff and defendant.

29. The completed hotel enhanced the value of defendant's separate property by at least $18,000, both at the time of its completion and at the time of its removal by defendant in April 1956.

30. In April 1956, defendant, with full knowledge of the pendency of this divorce action, removed the hotel from the premises in Marlin, with the fraudulent view of injuring the property rights of plaintiff.

31. One of the primary reasons defendant removed the hotel from Marlin was the intent to defraud plaintiff out of his property rights in the building or for reimbursement of his community share in the community funds expended on the hotel.

32. After its removal from Marlin defendant reconstructed the hotel in Houston on real property owned by a third person, the identity of such person and the location of such premises being unknown to the plaintiff and the court.

## Conclusions of Law

4. Plaintiff should be reimbursed by defendant for his ½ community interest in the enhanced value of the Marlin property by reason of the hotel being constructed thereon in part with community funds.

5. Defendant having removed the hotel beyond the reach and knowledge of plaintiff and this court, after the institution of this divorce action, and with a view of fraudulently injuring plaintiff's property rights, plaintiff is entitled to a $4,500 personal judgment against defendant.

6. The hotel and realty having been placed beyond the reach of the plaintiff and the court, the court is unable to grant an equitable lien against the property to secure the debt of reimbursement due plaintiff from defendant.

(The court awarded defendant the automobiles and deep freeze and television described above, subject to all indebtedness against same, as well as the seven head of cattle.)

Defendant appeals to this court on 15 points, which present three basic contentions material to a determination of this appeal:

1) The evidence is insufficient to sustain the Trial Court's finding that ½ of the money used in construction of the hotel in Marlin was community funds.

2) The evidence is insufficient to sustain the Trial Court's finding that the completed hotel enhanced the value of defendant's separate property by $18,000.

3) The evidence is insufficient to sustain the Trial Court's finding that the defendant tore down the hotel in Marlin during the pendency of this suit in fraud of the plaintiff's property rights.

Reverting to the 1st contention, that the evidence is insufficient to sustain the Trial Court's finding that ½ of the money used in construction of the hotel in Marlin was community funds: The Trial Court found that at least $14,000 was expended in the construction of the hotel. The building was a two-story frame building approximately 62 feet by 40 feet, containing 20

rooms and two baths. The evidence is sufficient to sustain this finding. The trial Court further found that ½ of such amount was paid out of plaintiff's and defendant's community funds.

The hotel was constructed on the separate property of defendant. Plaintiff seeks reimbursement for amounts spent on the property he contends were community funds. In such situation the presumption is that the improvements were made with separate funds and plaintiff is charged with the burden of proving the amounts spent were from community funds. Edsall v. Edsall, Tex.Civ.App., 240 S.W.2d 424; King v. King, Tex.Civ.App., 218 S.W. 1093 (er. dism'd.); Jenkins v. Robinson, Tex. Civ.App., 169 S.W.2d 250; Lane v. Kittrel, Tex.Civ.App., 166 S.W.2d 763; Norris v. Vaughn, 152 Tex. 491, 260 S.W.2d 676.

The court, in the Edsall case, supra, says:

"It is contended by appellee's fifth point that 'when appellee husband legally in control of the community, failed to keep records sufficient to segregate amounts spent by the community for the benefit of his separate property from bona fide community expenditures, he was responsible for the commingling and his separate estate should be charged with the entire amount.' We cannot agree with this contention. *The burden rested on appellant to show that the amount of money from community estate spent for the repairs and insurance of appellee's separate property. Appellant was the party seeking reimbursement and carried the burden of proving the amounts she was entitled to be repaid.* Speer's Law of Marital Rights, 3rd Ed., p. 472; Lane v. Kittrel, Tex.Civ.App., 166 S.W. 2d 763; Colden v. Alexander, 141 Tex. 134, 171 S.W.2d 328." [240 S.W.2d 430.]

The court, in the King case, supra, says:

"If the husband claims that his separate estate or the community estate should be reimbursed on account of funds used in making such improvements (on separate property of the wife), the burden is upon him to show to what extent such right of reimbursement exists." [218 S.W. 1096.]

The Court, in the Jenkins case, supra, says:

"The real estate was * * * the separate property of Cecil Jenkins. The only right or interest asserted by appellees * * * was that the community estate should be reimbursed for its funds used in paying in part the notes representing a part of the purchase price * * * *Having so alleged the burden was on appellees to prove that the notes were paid in part with community funds * * * This burden is not met by merely showing that the indebtedness was paid during the time the martial relationship existed; but it must be established by a preponderance of the evidence as in any civil case not otherwise controlled by statute or rule of law.* This burden of proof is not aided by the statutory presumption that all property acquired during marriage is presumed to be community property; because this presumption would defeat the rule that the burden of proof is on appellees to show that the community property acquired under that presumption was actually used to pay off the indebtedness on the real estate. If the rule were otherwise, then all one spouse need do to acquire a community interest in property acquired by the other before marriage would be to show that the note or notes representing a part of the purchase price were paid after marriage * * *; and having alleged that the indebtedness against the real estate was paid in part with community funds, they had the burden of proof to establish that fact. * * *" [169 S.W. 2d 251.]

We have very carefully reviewed the record in a light most favorable to plaintiff,

and conclude that the most that can be made of same is that defendant had land, cattle, hogs and other property prior to the marriage; that plaintiff had none; that the hotel was constructed during the marriage upon the separate real estate of defendant; that the hotel has been paid for and that its cost was approximately $14,000; that defendant gave advice which yielded to her a considerable income.

■ We believe that the evidence is insufficient to sustain the Trial Court's finding that ½ of the money used in construction of the hotel in Marlin was from community property. Moreover, it is our view that the plaintiff has not discharged the burden of proof incumbent upon him under the authorities cited to trace the community funds into the structure erected on defendant's separate property.

■ The Trial Court found that the completed hotel *enhanced* the value of defendant's separate property by $18,000. Only two witnesses testified on this point. The first, a preacher-carpenter, testified that he thought the completed structure to be worth $22,000. He had never before appraised any property or sold any property; nor did he know of any property selling for similar amounts in the colored section of Marlin. He was unable to explain how he arrived at the $22,000 figure. The other witness testified that the structure was worth $18,-432. He lived in Corsicana, had not seen the hotel, based his testimony on a picture of the hotel and by computing its size on a square footage basis. He testified that he could conceive of conditions which would render the property less valuable; that its use as a "house of dissipation" would do so; and that he had not taken such facts into consideration. The hotel was erected at a cost of $14,000. We think the evidence insufficient to sustain the Trial Court's finding that the completed hotel enhanced the value of defendant's separate property by $18,000.

The Trial Court found that defendant tore the structure down during the pendency of this suit in fraud of the plaintiff's property rights. The hotel was torn down by defendant, removed to Houston, and rebuilt. It has since been destroyed by fire. It had no insurance coverage and was a total loss. The Trial Court found that the structure was removed to Houston with intent to defraud plaintiff of his property rights in the building—and for such reason concluded that plaintiff was entitled to a $4,500 personal judgment against defendant. The evidence reflects that defendant removed the building to Houston because the property was not producing any revenue in Marlin, and because she disapproved of its use as a "house of dissipation". One witness, Dock Reese, testified that defendant, while telling him the foregoing reasons for removing the house, told him additionally that there had been arguments between her and plaintiff and by removing the building she would get rid of the arguments that existed. The witness Dock Reese has had differences with defendant and at the time he testified had a lawsuit for services pending against defendant.

■ It is our view that the evidence here was insufficient to sustain the Trial Court's finding that defendant removed the building to Houston with a view of fraudulent injury to defendant's property rights.

We have carefully reviewed the Statement of Facts in this case, have weighed the evidence both in support of the Findings under review and that contrary to same, and while there is some evidence in support of same, we are of the view that the evidence is insufficient to support the Findings and judgment. See In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

The judgment of the Trial Court is reversed and remanded.

HALE, J., took no part in the consideration or disposition of this case.